# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| POLK AUDIO, INC.<br>5601 Metro Drive<br>Baltimore, Maryland 21215<br>    Plaintiff<br><br>v.<br><br>AUDIO VIDEO CREATIONS, INC.,<br><br>    and<br><br>STEVEN JAVAHERIAN<br><br>    and<br><br>MARK SYETTA<br><br>    and<br><br>ARLENE SYETTA,<br><br>    ~~Defendant.~~Defendants. | Civil Action No.: WMN-02-CV-3113 |

## FIRST AMENDED COMPLAINT

Plaintiff Polk Audio, Inc. ("Polk Audio"), by its attorneys Piper Rudnick LLP, as and for its complaint herein against ~~defendant~~Defendants Audio Video Creations, Inc. ("AVC"), Steven Javaherian, Mark Syetta, and Arlene Syetta, alleges:

### NATURE OF ACTION

This is a civil action for breach of contract, conversion, and fraud based upon ~~defendant~~Defendants's wrongful acts in connection with the unauthorized sale of audio loudspeakers manufactured by plaintiff.

## PARTIES

1. Plaintiff Polk Audio is a Maryland corporation, having its principal place of business at 5601 Metro Drive, Baltimore, Maryland 21215.

2. Defendant AVC is a New York corporation having its principal place of business at 999 Northern Boulevard, Manhasset, NY 11030.

3. On information and belief, Defendant Steven Javaherian is a resident of the State of New York and, at all relevant times, was the President and sole shareholder of Defendant AVC.

4. On information and belief, Defendant Mark Syetta is a resident of the State of New York and, at all relevant times, was an employee of Defendant AVC.

5. On information and belief, Defendant Arlene Syetta is a resident of the State of New York and, at all relevant times, was an employee of Defendant AVC.

## JURISDICTION AND VENUE

6. ~~3.~~ This Court has original subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332. The parties are citizens of different states and the amount in controversy exceeds $75,000.

7. ~~4.~~ The Court has personal jurisdiction over ~~defendant~~Defendant AVC by reason of the express provisions of the contract that underlies this dispute. A copy of a Dealer Agreement between Polk Audio and AVC, dated November 11, 1998 (the "Dealer Agreement"), is attached hereto as Ex. 1. By that contract, the ~~parties~~Polk Audio and AVC explicitly agreed (a) to submit to the personal jurisdiction of any Maryland court (state or federal), and (b) to waive any objections to venue in any Maryland court (state or federal). *See* Ex. 1 at § 15(b). This Court also has personal jurisdiction over all

Defendants by virtue of Md. Code Ann., Cts. & Jud. Proc. § 6-103(1), in that ~~defendant AVC transacts~~Defendants transact business in the State of Maryland. Specifically, ~~defendant~~Defendant AVC, under the direction and control of Defendants Steven Javaherian, Mark Syetta, and Arlene Syetta, (a) entered into a contract in the State of Maryland with a Maryland resident, which contract is governed by Maryland law, and pursuant to which contract AVC, through and under the direction and control of Steven Javaherian, Mark Syetta, and Arlene Syetta, placed purchase orders for, paid for some but not all, received, and resold, goods manufactured in or shipped from Maryland; and (b) shipped goods for sale into Maryland. This Court also has personal jurisdiction over all Defendants pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-103(3), in that Defendants caused tortious injury in Maryland by acts committed in Maryland. This Court also has personal jurisdiction over all Defendants pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-103(4), in that Defendants caused tortious injury in Maryland by acts committed outside Maryland and, as indicated above, Defendants regularly conducted business in Maryland.

8. ~~5.~~ Pursuant to the Dealer Agreement, ~~defendant~~Defendant AVC consents to service of process in this action by certified mail, return receipt requested. Ex. 1 at § 15(b).

9. ~~6.~~ Venue is proper in this district by virtue of the express provisions of the Dealer Agreement. *See* Ex. 1 at § 15(b). Venue also is proper in this ~~circuit~~district by virtue of 28 U.S.C. § 1391(a)(1) and (c), and (a)(3).

3

## FACTUAL ALLEGATIONS

### The Dealer Agreement

10. ~~7.~~ Polk Audio engineers, develops, manufactures, and markets audio loudspeakers of excellence and high quality that are sold nationally and used in home entertainment and automobile audio systems.

11. ~~8.~~ Since 1972, Polk Audio has been continuously distributing and selling its loudspeakers to the public through authorized dealers and distributors throughout the United States under the POLK AUDIO® trademark.

12. ~~9.~~ Polk Audio advertises its loudspeakers in numerous audio publications, including *Sound and Vision*, *Stereophile*, and *Car Sound*.

13. ~~10.~~ By reason of the excellence and high quality of its loudspeakers, its development and maintenance of a knowledgeable, well-trained, and responsible authorized dealer network dedicated to the sale of its loudspeakers, and its substantial investment in the promotion of its loudspeakers, Polk Audio has developed an outstanding reputation for excellence within the audio industry and among consumers.

14. ~~11.~~ Defendant AVC is a retailer of consumer electronics to the general public.

15. <u>Defendant Steven Javaherian is the President and sole shareholder of Defendant AVC and is engaged in the daily operations of AVC's business, including conduct giving rise to the claims herein.</u>

16. <u>On information and belief, Defendants Mark and Arlene Svetta are employees of Defendant AVC and are engaged in the daily operations of AVC's business, including conduct giving rise to the claims herein.</u>

4

17. ~~12.~~ On November 11, 1998, ~~AVC and~~ Polk Audio <ins>and Steven Javaherian, on behalf of AVC,</ins> executed the Dealer Agreement, by which AVC agreed to become an authorized dealer of Polk Audio loudspeakers. *See* Ex. 1.

18. ~~13.~~ The Dealer Agreement required AVC to devote its best efforts to the sale of Polk Audio loudspeakers; to maintain a reasonable inventory of and facilities for the storage and maintenance of Polk Audio loudspeakers; to employ a reasonable number of sales personnel who are knowledgeable and experienced in sound reproduction, familiar with Polk Audio loudspeakers, and able to demonstrate the workings and uses of the loudspeakers to consumers; to maintain a training program for sales personnel for the display and demonstration of Polk Audio loudspeakers; and to provide adequate facilities for demonstrating Polk Audio loudspeakers. *See* Ex. 1 at § 3.

19. ~~14.~~ Section 6(b) of the Dealer Agreement prohibited AVC from selling Polk Audio products to anyone other than retail customers. *See* Ex. 1 at § 6(b). As a result, AVC was contractually prohibited from, among other things, selling Polk Audio products to any dealer who was not an authorized Polk Audio dealer (an act known as "transshipping").

20. ~~15.~~ Polk Audio has a dealer agreement with each of its authorized dealers, and each of those dealer agreements is substantially identical to the Dealer Agreement with respect to the provisions described in the two preceding Paragraphs.

21. ~~16.~~ The Dealer Agreement expressly provides a formula for liquidated damages to be paid by AVC in the event of AVC's breach of the prohibition set out in Section 6(b) of the Dealer Agreement. The Dealer Agreement provides, in relevant part:

> The parties acknowledge that it may be difficult or impossible to measure the economic damages sustained by Polk arising out of Dealer's violation

of this Section 6. Therefore, Dealer expressly agrees that Polk shall be entitled to ... *liquidated damages equal to three times the gross profit of any product sold in violation of Section 6 (a)-(c)*. For purposes of the preceding sentence, *gross profits shall be defined to mean the difference between the dealer price of the Products and Polk's suggested retail price for those same Products* with both prices being established, if feasible, as of the date Dealer's violation of Section 6 is discovered by Polk.

Ex. 1 at § 6(d) (emphasis added).

22. ~~17.~~ The Dealer Agreement also defines the price to be paid by AVC for Polk Audio products. In particular, the Dealer Agreement provides that

> Polk shall sell the Products to the Dealer at the prices specified in the dealer price sheet which is in effect at the date Dealer's order is accepted by Polk. The current dealer price schedule is attached as Schedule C. Polk may amend such price schedule at any time without prior notice to Dealer and shall have no liability to Dealer in connection with Dealer's inventory of unsold Products as of the effective date of such amendment. Price amendments shall apply to all orders accepted by Polk subsequent to the effective dates of the amendment.

Ex. 1 at § 4(a).

23. ~~18.~~ The Home Speaker Products price list attached as Schedule C to the Dealer Agreement provides for terms of sale of "5% 30, net 31 days F.O.B. Shipping Point." Ex. 1, Sch. C at 2.

24. ~~19.~~ The Dealer Agreement bound AVC "to pay all amounts owing to Polk (whether arising out of merchandise shipped on open account or otherwise) within the terms established by Polk's Credit Department." Ex. 1 at § 5(c).

25. ~~20.~~ The Dealer Agreement provides that it "shall be governed by, and construed in accordance with the laws of the State of Maryland." Ex. 1 at § 15(a).

26. ~~21.~~ Except in extraordinary circumstances not applicable to this case, the Dealer Agreement was "terminable at will by either party upon not less than thirty (30) days written notice." Ex. 1 at § 2(a).

6

### Defendant's Sales to Unauthorized Dealer

27. ~~22.~~ Polk Audio does not distribute its loudspeakers through any dealer who is unauthorized, nor permit its authorized dealers to do so, because sales by multiple and indiscriminate dealers would dilute the integrity and quality of Polk Audio's distribution network and would permit unauthorized dealers to capitalize on the substantial investment and efforts expended by Polk Audio and its authorized dealers in selling Polk Audio loudspeakers.

28. ~~23.~~ Federal Stereo is a retailer of consumer electronics to the general public. At least in part, Federal Stereo sells consumers electronics to retail customers through its site on the World Wide Web, http://www.federalstereo.com. Federal Stereo is not and has never been an authorized dealer of Polk Audio products.

29. ~~24.~~ 800 Stereo also is a retailer of consumer electronics to the general public. Like Federal Stereo, 800 Stereo sells consumer electronics to retail customers, at least in part, through its site on the World Wide Web, http://www.800stereo.com. 800 Stereo is not and has never been an authorized dealer of Polk Audio products.

30. ~~25.~~ On information and belief, Federal Stereo and 800 Stereo are affiliated companies in that they are owned and/or operated by the same individuals.

31. ~~26.~~ On or about February 2001, by virtue of displays found on Federal Stereo's Web site, Polk Audio became aware that Federal Stereo was advertising and selling Polk Audio loudspeakers without authorization.

32. ~~27.~~ On or about February 18, 2001, Polk Audio purchased a pair of Polk Audio loudspeakers from Federal Stereo.

33.  ~~28.~~ By tracing the serial number on the product purchased from Federal Stereo, Polk Audio determined that the product was originally purchased from Polk Audio by AVC under the Dealer Agreement.

34.  ~~29.~~ In or about May, 2001, a Polk Audio representative called AVC to advise AVC that AVC had sold Polk Audio products in violation of the Dealer Agreement, that Polk Audio does not permit authorized dealers to sell to anyone other than retail customers, and that soon AVC would receive a letter from Polk Audio demanding that AVC stop transshipping Polk Audio products.

35.  ~~30.~~ On or about June 18, 2001, Polk Audio's Dean Tassio sent a "cease-and-desist" letter to AVC's Mark Syetta. A copy of the letter, dated June 18, 2001, is attached hereto as Ex. 2. Mr. Syetta received that letter on or about June 19, 2001. The letter demanded that AVC (a) immediately stop selling Polk Audio products to non-retail purchasers; (b) forward to Polk Audio a list of all of AVC's non-retail sales (including the name of the purchaser, the date of the purchase, the Polk Audio product involved, and the price received by AVC); (c) to the extent possible, repurchase from the non-retail purchasers all Polk Audio products sold by AVC to non-retail purchasers; and (d) confirm within seven days of receipt of the letter that AVC had ceased to sell Polk Audio products to non-retail purchasers.

36.  ~~31.~~ AVC did not comply with any of these demands from Polk Audio and, in particular, AVC did not cease to sell Polk Audio products to non-retail customers.

37.  ~~32.~~ In or about August, 2001, Polk Audio became aware that 800 Stereo was advertising and selling Polk Audio loudspeakers without authorization through 800 Stereo's Web site.

38. ~~33.~~ On or about September 3, 2001, Polk Audio purchased a Polk Audio product from 800 Stereo. Polk Audio received this product from Federal Stereo.

39. ~~34.~~ On or about September 28, 2001, Polk Audio purchased another Polk Audio product from 800 Stereo. Polk Audio received the product on or about October 4, 2001. The label on the box received by Polk Audio indicated that the product was shipped to Polk Audio by AVC.

40. ~~35.~~ Polk Audio terminated the Dealer Agreement with AVC by letter dated February 25, 2002. Peter Gaskarth's letter to ~~Steve~~<u>Steven</u> Javaherian, dated February 25, 2002, is attached as Ex. 3.

### ~~Defendant~~<u>Defendants</u>'s Fraudulent Credit Card Practices
### And Conversion of Polk Audio's Property

41. ~~36.~~ On or about August 14, 2000, AVC authorized Polk Audio to charge all amounts due to Polk Audio from AVC for AVC's purchases of Polk Audio products to a credit card issued to AVC's ~~principal~~ Mark Syetta by Citibank South Dakota, N.A. ("Citibank"). <u>On information and belief, Arlene Syetta was also a holder of the same credit card.</u>

42. ~~37.~~ At no time after authorizing Polk Audio to charge the amounts described in the preceding Paragraph to ~~AVC's principal~~<u>Mark and Arlene Syetta</u>'s credit card did AVC notify Polk Audio that AVC intended to withdraw, retract, or otherwise terminate, or had in fact withdrawn, retracted, or in any other way terminated, that authorization.

43. ~~38.~~ On January 22, 2002, in fulfillment of a telephonic order placed by AVC with Polk Audio's sales representative, Polk Audio shipped to AVC certain Polk Audio loudspeakers invoiced at $7,277.24. AVC took delivery and possession of these

9

products on January 28, 2002. True copies of Invoice No. 565827, and the relevant delivery receipt are appended hereto as Ex. 4.

44.  39. On January 23, 2002, in fulfillment of AVC's Purchase Order No. 122601ADD, Polk Audio shipped to AVC certain Polk Audio loudspeakers invoiced at $2,593.44. AVC took delivery and possession of these products on January 29, 2002. True copies of Polk Audio's Sales Orders No. 453310 (which covers the relevant products ordered by AVC through Purchase Order No. 122601ADD), Invoice No. 566060, and the relevant delivery receipt, signed by Steven Javaherian, are appended hereto as Ex. 5.

45.  40. On January 24, 2002, in fulfillment of AVC's Purchase Order No. 1226MSADD, Polk Audio shipped to AVC certain Polk Audio loudspeakers invoiced at $5,555.44. AVC took delivery and possession of these products on January 30, 2002. True copies of Polk Audio's Sales Order No. 450739 (which covers merchandise ordered by AVC through Purchase Order No. 1226MSADD), Invoice No. 566136, and the relevant delivery receipt, signed by Steven Javaherian, are appended hereto as Ex. 6.

46.  41. On January 29, 2002, in fulfillment of AVC's Purchase Order No. 122601ADD, Polk Audio shipped to AVC certain Polk Audio loudspeakers invoiced at $555.56. AVC took delivery and possession of these products on February 4, 2002. True copies of Polk Audio's Sales Order No. 453904 (which covers the relevant products ordered by AVC through Purchase Order No. 122601ADD), Invoice No. 566896, and the relevant delivery receipt, signed by Mark Svetta, are appended hereto as Ex. 7.

47.  42. On February 13, 2002, in fulfillment of AVC's Purchase Order No. 0208MS, Polk Audio shipped to AVC certain Polk Audio loudspeakers invoiced at $15,290.39. AVC took delivery and possession of these products on February 19, 2002. True copies of

Polk Audio's Sales Order No. 456346 (which covers the relevant products ordered by AVC through Purchase Order No. 0208MS), Invoice No. 568965, and the relevant delivery receipt, signed by Steven Javaherian, are appended hereto as Ex. 8.

48.     43. On February 19, 2002, in fulfillment of AVC's Purchase Order No. 0208MS, Polk Audio shipped to AVC certain Polk Audio loudspeakers invoiced at $3,292.40. AVC took delivery and possession of these products on February 25, 2002. True copies of Polk Audio's Sales Order No. 457069 (which covers the relevant products ordered by AVC through Purchase Order No. 0208MS), Invoice No. 569588, and the relevant delivery receipt, signed by Mark Syetta, are appended hereto as Ex. 9.

49.     44. On February 27, 2002, in fulfillment of AVC's Purchase Order No. 0208MS, Polk Audio shipped to AVC certain Polk Audio loudspeakers invoiced at $439.04. AVC took delivery and possession of these products on March 6, 2002. True copies of Polk Audio's Sales Order No. 456346 (which covers the relevant products ordered by AVC through Purchase Order No. 0208MS), Invoice No. 570851, and the relevant delivery receipt are appended hereto as Ex. 10.

50.     45. After takingDefendant AVC, under the direction and control of Steven Javaherian and Mark and Arlene Syetta, took delivery and possession of Polk Audio products as described in the foregoing Paragraphs 3843 through 44,49. Defendants Mark and Arlene Syetta, acting in concert and agreement with Defendants Steven Javaherian and AVC, falsely represented to Citibank that AVCMark and Arlene Syetta had not authorized Polk Audio to charge AVC'stheir credit card for those products.

51.     46. As a result of AVC'sDefendants' false representation as described in Paragraph 4550 above, Citibank compelled Polk Audio was subject to returnchargebacks for the

11

sums paid to Polk Audio for the Polk Audio products ordered, shipped, and delivered as described in Paragraphs ~~38~~43 to ~~44~~49 above.

52. ~~47.~~ Polk Audio ~~did return~~was charged, in fact, for the sums described in Paragraph ~~46~~51 and, to this day, has not been paid for products ordered, shipped, and delivered as described in Paragraphs 43 to 49 above ~~to Citibank~~.

53. ~~48.~~ On information and belief, after ~~taking~~Defendant AVC, under the direction and control of Steven Javaherian and Mark and Arlene Syetta, took delivery and possession of Polk Audio products as described in the foregoing Paragraphs ~~38~~43 through ~~44~~49. Defendants AVC, Steven Javaherian, and Mark and Arlene Syetta, acting in concert and agreement with one another, sold those Polk Audio products and received payment from the buyer or buyers in return.

54. On July 8, 2002, Polk Audio demanded in writing that AVC remit payment in the amount of $38,096.78, which sum represented past-due invoices for product ordered and delivered as described in Paragraphs 43 through 49 above, plus lost discounts, interest, and bank fees. A copy of the July 8, 2002, letter from Robert A. Tryson to Steven Javaherian, with attached balance statement and delivery receipt signed by Arlene Syetta, is attached hereto as Ex. 11. Defendants did not respond to Polk Audio's demand.

55. ~~49.~~ As of the filing of this ~~action, AVC~~First Amended Complaint, Polk Audio has not been paid ~~Polk Audio~~ for any amounts described in the ~~Polk Audio~~foregoing Paragraph 54, or for products shipped and delivered to AVC as described in the foregoing Paragraphs ~~38~~43 through ~~44.~~49.

12

## FIRST CLAIM FOR RELIEF
### (Breach of Contract – Liquidated Damages – Defendant AVC)

56. ~~50.~~ Polk Audio repeats and realleges paragraphs 1 through ~~49~~55 of this complaint, as though fully set forth herein.

57. ~~51.~~ The Dealer Agreement prohibited AVC from selling Polk Audio products to anyone other than retail customers.

58. ~~52.~~ By selling Polk Audio loudspeakers to Federal Stereo and 800 Stereo, both of which are retailers of consumer electronics not authorized to sell Polk Audio products, AVC breached the Dealer Agreement.

59. ~~53.~~ As a direct and proximate result of AVC's aforesaid breaches, Polk Audio has suffered injury in that the integrity of Polk Audio's distribution network has been diluted, two or more unauthorized retailers have capitalized on the investments and efforts of Polk Audio authorized dealers, the incentive of Polk Audio authorized dealers to promote Polk Audio products has been threatened or diminished, and Polk Audio's ability to control the marketing, image, and reputation of Polk Audio products has been hindered.

60. ~~54.~~ Pursuant to the Dealer Agreement, AVC owes to Polk Audio liquidated damages in an amount to be determined at trial.

WHEREFORE, Polk Audio seeks monetary damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract – Debt – Defendant AVC)

61. ~~55.~~ Polk Audio repeats and realleges paragraphs 1 through ~~54~~60 of this complaint, as though fully set forth herein.

<u>62.</u>   ~~56.~~ The Dealer Agreement obligated AVC to pay Polk Audio for Polk Audio products supplied to AVC by Polk Audio under the Dealer Agreement.

<u>63.</u>   ~~57.~~ By failing to pay Polk Audio for Polk Audio products as described above, AVC breached the Distributor Agreement.

<u>64.</u>   ~~58.~~ As a direct and proximate ~~cause~~<u>result</u> of ~~defendants~~<u>Defendant AVC's</u> aforesaid breach, Polk Audio has suffered injury and monetary damages in an amount to be established at trial and amounting to at least $~~35,003.51~~<u>38,096.78</u> plus interest.

WHEREFORE, Polk Audio seeks monetary damages in an amount to be determined at trial.

**THIRD CLAIM FOR RELIEF**
**(Conversion – All Defendants)**

<u>65.</u>   ~~59.~~ Polk Audio repeats and realleges paragraphs 1 through ~~58~~<u>64</u> of this complaint, as though fully set forth herein.

<u>66.</u>   ~~60.~~ As a result of AVC's failure to pay Polk Audio for the Polk Audio products shipped and delivered to AVC as described in the foregoing Paragraphs ~~38~~<u>43</u> through ~~44,~~<u>49.</u> Polk Audio has a right to immediate possession of those Polk Audio products.

<u>67.</u>   ~~61.   AVC has~~<u>Defendants Steven Javaherian, Mark Svetta, Arlene Svetta, and AVC, acting in concert and agreement with one another, have</u> exercised dominion and control over those Polk Audio products in a manner inconsistent with Polk Audio's rights.

<u>68.</u>   ~~62.   AVC has~~<u>Defendants Steven Javaherian, Mark Svetta, Arlene Svetta, and AVC, acting in concert and agreement with one another, have</u> sold those Polk Audio products without authorization to persons or entities not entitled to the immediate possession of those products.

14

69. 63. AVCDefendants Steven Javaherian, Mark Svetta, Arlene Svetta, and AVC, acting in concert and agreement with one another, maintained possession of those Polk Audio products by fraud.

70. 64. AVC hasDefendants Steven Javaherian, Mark Svetta, Arlene Svetta, and AVC, acting in concert and agreement with one another, have barred Polk Audio access to those Polk Audio products.

71. 65. AVC hasDefendants Steven Javaherian, Mark Svetta, Arlene Svetta, and AVC, acting in concert and agreement with one another, have refused to pay Polk Audio for those Polk Audio products.

72. 66. AVCDefendants Steven Javaherian, Mark Svetta, Arlene Svetta, and AVC, acting in concert and agreement with one another, engaged in the above conduct with a malicious intent to take those Polk Audio products wrongfully for AVCDefendants's own use and enjoyment.

73. 67. As a result of AVC'sthe Defendants' wrongful conduct, Polk Audio has suffered monetary damages in an amount to be determined at trial and amounting to at least $35,003.5138,096.78 plus interest.

74. 68. In addition to monetary damages, Polk Audio is entitled to exemplary or punitive damages as a result of AVCDefendants's wrongful and malicious conduct.

WHEREFORE, Polk Audio seeks monetary and exemplary or punitive damages in an amount to be determined at trial, but in any event exceeding $75,000.

### FOURTH CLAIM FOR RELIEF
### (Fraud – All Defendants)

75. 69. Polk Audio repeats and realleges paragraphs 1 through 6874 of this complaint, as though fully set forth herein.

15

76. ~~70.~~ ~~AVC~~Defendants Steven Javaherian, Mark Svetta, Arlene Svetta, and AVC, acting in concert and agreement with one another, falsely represented to Polk Audio that, as described above, AVC authorized Polk Audio to charge ~~AVC's principal~~Mark and Arlene Svetta's credit card for amounts due Polk Audio for Polk Audio products delivered to AVC under the Dealer Agreement.

77. ~~71.~~ Each and every time that ~~AVC~~Defendants ordered and took delivery of Polk Audio products under the Dealer Agreement, ~~AVC~~Defendants repeated by implication ~~its~~their representation that AVC authorized Polk Audio to charge ~~to AVC's principal~~Mark and Arlene Svetta's credit card ~~as described above~~for amounts due to Polk Audio for Polk Audio products delivered to AVC under the Dealer Agreement.

78. ~~72.~~ ~~AVC~~Defendants knew at the time of making the representations described in Paragraphs ~~70~~75 and ~~71~~76 above that those representations were false.

79. ~~73.~~ At no time did ~~AVC~~Defendants notify Polk Audio that AVC intended to withdraw, retract, or otherwise terminate Polk Audio's authorization to charge ~~AVC's principal~~Mark and Arlene Svetta's credit card as described above. At no time did ~~AVC~~Defendants notify Polk Audio that AVC had in fact withdrawn, retracted, or otherwise terminated that authorization.

80. ~~74.~~ At the time of making the false representations described in Paragraphs ~~70~~75 and ~~71~~76 above, ~~AVC~~Defendants fraudulently intended to withdraw the authorization for credit card payments to Polk Audio for Polk Audio products delivered to AVC under the Dealer Agreement as described in Paragraphs ~~38~~43 through ~~44~~49 above.

16

81. ~~75.~~ At the time of making the false representations described in Paragraphs ~~70~~75 and ~~71~~76 above, ~~AVC~~Defendants fraudulently intended that Polk Audio ship and deliver Polk Audio products to AVC in reliance on ~~AVC~~Defendants's false representations.

82. ~~76.~~ In reasonable and justifiable reliance on ~~AVC's~~Defendants' representations, Polk Audio did, in fact, ship and deliver Polk Audio products to AVC under the Dealer Agreement, as described in Paragraphs ~~38~~43 through ~~44~~49 above.

83. ~~77.~~ As a result of ~~AVC's~~Defendants' intentional, wrongful, and fraudulent conduct, Polk Audio has suffered monetary damages in an amount to be determined at trial and amounting to at least $~~35,003.51~~38,096.78 plus interest.

84. ~~78.~~ In addition to monetary damages, as a result of ~~AVC~~Defendants's intentional, wrongful, and fraudulent conduct, Polk Audio is entitled to exemplary or punitive damages.

WHEREFORE, Polk Audio seeks monetary and exemplary or punitive damages in an amount to be determined at trial, but in any event exceeding than $75,000.

### PRAYER FOR RELIEF

Based on the foregoing, Polk Audio prays for judgment as follows:

(A) An order granting judgment in favor of Plaintiff Polk Audio and against ~~Defendant AVC~~Defendants AVC, Steven Javaherian, Mark Svetta, Arlene Svetta, and each of them;

(B) An order ~~awarding~~directing Defendants AVC, Steven Javaherian, Mark Svetta, Arlene Svetta, and each of them, to pay monetary damages to Polk Audio in an amount to be determined at trial;

(C) An order ~~awarding~~directing Defendants AVC, Steven Javaherian, Mark Syetta, Arlene Syetta, and each of them, to pay exemplary or punitive damages to Polk Audio in an amount to be determined at trial;

(D) An order directing ~~Defendant AVC~~Defendants AVC, Steven Javaherian, Mark Syetta, Arlene Syetta, and each of them, to pay the costs and disbursements of this action, including attorneys' fees; and

(E) Such other and further relief as the Court deems just and proper.

Dated: ~~September~~ March ___, 2002

Michael F. Brockmeyer (Fed. Bar No. 02307)
Jay I. Morstein (Fed. Bar. No. 00123)
Paolo Morante (Fed. Bar No. 25287)
PIPER RUDNICK LLP
6225 Smith Avenue
Baltimore, Maryland  21209-3600
410-580-3000

*Attorneys for Polk Audio, Inc.*