UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

POLK AUDIO, INC.

    Plaintiff

v.                                                    Case No.: WMN-02-3133

AUDIO VIDEO CREATIONS, INC.,

    Defendant.

**REPLY MEMORANDUM IN SUPPORT OF
MOTION OF PLAINTIFF POLK AUDIO, INC.,
<u>FOR LEAVE TO FILE FIRST AMENDED COMPLAINT</u>**

Plaintiff Polk Audio, Inc. ("Polk Audio") respectfully submits this memorandum in further support of its motion for leave to file the First Amended Complaint. In opposing the motion, Defendant Audio Video Creations ("AVC") argues that Polk Audio's proposed amendments would be futile because this Court lacks personal jurisdiction over the proposed individual Defendants. AVC contends that (a) the Court lacks jurisdiction under § 6-103(b)(1) of the Maryland long-arm statute because the individual Defendants "transacted business" solely on behalf of AVC, and (b) the "fiduciary shield" doctrine prevents this Court from asserting personal jurisdiction over the individual Defendants for their tortious conduct under §§ 6-103(b)(3) and (b)(4) of the Maryland long-arm statute. Each of these arguments must fail.

The individual Defendants did not act on behalf of AVC when they engaged in the conduct for which Polk Audio seeks redress from them. To the contrary, by authorizing Polk Audio to charge their *personal* credit card for products shipped to AVC, Mark and Arlene Syetta willingly became *personal guarantors* of AVC's debts to Polk Audio, entered into a *direct*

*contractual relationship* with Polk Audio, and thereby induced Polk Audio to continue its relationship with AVC—a relationship which, due to AVC's financial difficulties and shaky credit, Polk Audio had been ready to terminate. As this Court has made clear, becoming a personal guarantor under such circumstances amounts to "transacting business" in Maryland for purposes of personal jurisdiction and properly subjects Mark and Arlene Syetta to suit in this Court. *See Choice Hotels International, Inc. v. Madison Three, Inc.*, 23 F.Supp.2d 617, 621-22 (D.Md. 1998).

Similarly, Mr. Javaherian did not act on behalf of AVC when he authorized and participated in the Defendants' unlawful scheme to defraud Polk Audio and convert Polk Audio's property. To the contrary, Mr. Javaherian was a co-conspirator in a tortious scheme for which Mark and Arlene Syetta, as a result of the overt act of authorizing payment through their own credit card, are personally answerable in this Court. Under these circumstances, as explained in greater detail below, Mr. Javaherian is equally subject to the jurisdiction of this Court. *See Cawley v. Bloch*, 544 F.Supp. 133, 135 (D. Md. 1982).

Moreover, none of the individual Defendants is protected by the so-called "fiduciary shield" doctrine. The doctrine cannot protect Steve Javaherian because, as the sole shareholder, director, and officer of AVC, a closely held corporation that he admittedly operated on a daily basis, Mr. Javaherian has a "substantial interest in the corporation." *U.S. v. Undetermined Quantities of Article of Drug*, 145 F.Supp.2d 692, 706 (D.Md. 2001); *see Zeman*, 717 F.Supp. at 377-78; *Christian Book Distribs.*, 137 Md.App. at 379. *See Christian Book Distributors, Inc. v. Great Christian Books, Inc.*, 137 Md.App. 367, 393 (Md. Ct. Spec. App. 2001). Similarly, the doctrine does not apply to Mark and Arlene Syetta because, as indicated above and explained in

greater detail below, they entered into a direct contractual relationship with Polk Audio by becoming guarantors of AVC's debt.

AVC also argues that Polk Audio's motion should be denied because the proposed amendments would visit an unfair burden on Defendants by excessively expanding discovery. This argument is disingenuous. AVC's liability is premised entirely on the conduct of Steve Javaherian, Mark Syetta, and Arlene Syetta, such that identical facts will have to be discovered regardless of whether those individuals are joined as defendants. Indeed, each of those individuals was scheduled to be deposed in this litigation before Polk Audio even filed the instant motion. Thus, contrary to AVC's unsupported assertions, the scope of discovery will be entirely unaffected by the proposed joinder.

In short, AVC's arguments must fail because the individual Defendants are amenable to suit in this Court and no unfair burden will result from their joinder. Accordingly, for the reasons stated herein and in Polk Audio's opening memorandum, the Court should grant Polk Audio's motion and permit the filing of the First Amended Complaint.

**A.    The Individual Defendants Cannot Hide Behind the Corporate Shield**

When, on August 14, 2000, Mark and Arlene Syetta offered their personal credit card to cover AVC's payments to Polk Audio, AVC had been experiencing credit problems with Polk Audio for at least one year. In August 1999, Polk Audio granted AVC an extension of the payment terms on a $7,000 invoice owing to Polk Audio. *See* Polk Audio's internal log of "Comments for Customer 1399 Audio Video Creations" ("Comment Log"), attached as Ex. D to Polk Audio's opening memorandum in support of this motion ("Mem. Supp."). Despite repeated calls from Polk Audio on the subject, AVC did not remit payment until February 25, 2000. *Id.* Three months later, on May 25, 2000, AVC was again delinquent on an invoice (dated May 11)

and had a pending order with Polk Audio for $9,500. *Id.* On June 19, Polk Audio advised Mr. Javaherian by letter that AVC's account would be placed on cash-on-delivery terms. *Id.*

By June 29, AVC was delinquent on payments totaling $10,599.86. *Id.* AVC failed to pay this amount, as well as an additional invoice due on July 1, 2000, bringing the total owing to Polk Audio at that time to $12,404.01. *Id.* On July 31, 2000, Polk Audio advised its regional sales representative, Mark Richards, that, unless Defendants provided him with payment on his next visit to AVC, Polk Audio would terminate the Dealer Agreement. *Id.*[1] On August 4, 2000, AVC gave Mr. Richards a check in the amount of $8,600 in partial payment of AVC's outstanding debt to Polk Audio. *Id.*

Seven days later, on August 11, Mr. Javaherian refused Polk Audio's proposal to fill AVC's orders on a cash-on-delivery basis. *Id.* To avert the termination of AVC's dealership, on August 14, 2000, Mark and Arlene Syetta, with Mr. Javaherian's consent, authorized Polk Audio to charge their personal credit card for orders shipped to AVC. *Id.*; Declaration of Mark J. Richards ("Richards Decl.), attached hereto as Ex. H, at 5; and Polk Audio's internal Charge Customer Information Sheet, Ex. E to Mem. Supp.

By authorizing Polk Audio to charge their personal credit card, Mark and Arlene Syetta agreed to pay AVC's future debts to Polk Audio. This was not an agreement between Polk Audio and AVC for which Mr. Syetta acted as a corporate agent, but rather a direct agreement between Polk Audio and the Syettas in which the latter agreed to be the personal guarantors for the corporation's debts. In exchange for the Syettas' promise to pay, Polk Audio agreed not to terminate the Dealer Agreement with AVC. The Syettas entered into this agreement with Polk

---

[1] The Dealer Agreement is terminable at will by either party upon 30 days notice. *See* Paragraph 2(a) of the Dealer Agreement, attached as Ex. 1 to the First Amended Complaint.

Audio for two principal reasons: (1) to induce Polk Audio not to terminate the Dealer Agreement with AVC, and (2) to derive personal benefit from the membership rewards program associated with the card in question. *See* Richards Decl. at 5. Under these circumstances, the Syettas must submit to the jurisdiction of this Court. *See Choice Hotels*, 23 F.Supp.2d at 621-22.

In *Choice Hotels*, plaintiff in a breach of contract action sought to establish this Court's personal jurisdiction over Madison, a non-resident corporation, and over the individual guarantors of Madison's license agreement with plaintiff. 23 F.Supp.2d at 618-19. On a motion to dismiss, the individual defendants argued that the Court could not assert personal jurisdiction over them pursuant to § 6-103(b)(1) of the Maryland long-arm statute because they were mere "passive investors" in the defendant corporation and did not "transact business" in Maryland. *Id.* at 621. The Court rejected this argument, holding that "*prima facie*, jurisdiction exists over the individual defendants based on their execution of the guaranty...." *Id.*

The Court noted that plaintiff's license agreement with the defendant corporation obligated the signatories to submit to jurisdiction in Maryland, and that language in the guaranty permitting the guarantors to be joined in a suit against the corporation was sufficient to give the guarantors reasonable notice of being haled into court in Maryland. *Id.* "More importantly," the Court added,

> the *guaranty was given in consideration and as an inducement for the license agreement with Madison....* Even if the individual defendants are, as they claim to be, mere passive investors in the corporate licensee, *insofar as they induced [plaintiff] to enter into the license agreement with Madison by furnishing their personal guarantees, they have "transacted business" within the contemplation of the Maryland Long-Arm Statute.* The guaranty, like the license agreement, was accepted by [plaintiff] in Maryland.... Furthermore, I am persuaded that, by virtue of the inextricable nature of the two separate agreements, and the fact that the one (the guaranty) induced the other (the license agreement), it is fair in the constitutional sense to charge the individual defendants (who as stockholders are persons who would be benefited by the license agreement

> between [plaintiff] and Madison) to litigate the question of their liability in a Maryland court. Accordingly, I am persuaded that the exercise of personal jurisdiction over the individual defendants, as well as over the corporate defendant, comports with due process.

23 F.Supp.2d at 621-22 (emphasis added).

Similarly here, the individual Defendants had reasonable notice that they could be haled into this Court because the Dealer Agreement between Polk Audio and AVC, like the license agreement in *Choice Hotels*, expressly stipulates to the jurisdiction of any Maryland court (state or federal). *See* ¶ 15(b) of the Dealer Agreement, Ex. 1 to the First Amended Complaint. In addition, like the guarantors in *Choice Hotels*, Mark and Arlene Syetta agreed to guarantee AVC's debts both for personal advantage and, more importantly, to induce Polk Audio to prolong the Dealer Agreement with AVC. Furthermore, as in *Choice Hotels*, the claims that Polk Audio seeks to assert against the individual Defendants arise directly from Mark and Arlene Syetta's agreement to act as AVC's guarantors. *See* 23 F.Supp.2d at 620. Accordingly, this Court has personal jurisdiction over Mark and Arlene Syetta for the claims asserted in the First Amended Complaint. *Choice Hotels*, 23 F.Supp.2d at 621-22; *see also Aeronca, Inc. v. Style-Crafters, Inc.*, 499 F.2d 1367 (4th Cir. 1974) (personal jurisdiction properly asserted over corporation that was guarantor of co-defendant).

Steve Javaherian is similarly amenable to suit in this Court in his personal capacity because he participated in and orchestrated the Defendants' tortious scheme to defraud Polk Audio and convert Polk Audio's property. As this Court has made clear, when

> (1) two or more individuals conspire to do something (2) that they could reasonably expect to lead to consequences in a particular forum, if (3) one co-conspirator commits overt acts in furtherance of the conspiracy, and (4) those acts are of a type which, if committed by a non-resident, would subject the non-resident to personal jurisdiction under the long-arm statute of the forum state, then those overt acts are attributable to the other co-conspirators, who thus become subject to personal jurisdiction in the forum, even if they have no direct contacts with the forum.

*Cawley*, 544 F.Supp. at 135.

In this case it is clear, at least for jurisdictional purposes, that Mr. Javaherian agreed with the other Defendants to carry out the tortious scheme alleged in the First Amended Complaint. Mr. Javaherian is the sole shareholder, director, and officer of AVC. *See* AVC's answer to Polk Audio's Interrogatory No. 1, attached as Ex. C to Mem. Supp. He admittedly managed AVC's daily business, particularly with respect to Polk Audio. *See* AVC's answer to Polk Audio's Interrogatory No. 2, attached as Ex. C to Mem. Supp. Indeed, during the course of AVC's credit difficulties with Polk Audio, as outlined above, Mr. Javaherian was Polk Audio's primary contact person at AVC, having frequent telephone contact with several Polk Audio employees in Maryland and elsewhere, and he was the person responsible for all of AVC's decisions on the subject. *See* Comment Log, Ex. D to Mem. Supp. When Mark and Arlene Syetta induced Polk Audio to continue the Dealer Agreement by acting as AVC's guarantors, they did so in consultation with Mr. Javaherian and with his express consent. *Id.* Mr. Javaherian personally took delivery of, and (unlawfully) resold, many of the Polk Audio products that Defendants converted in the course of the scheme to defraud Polk Audio. *See* AVC's Answer to Polk Audio's Interrogatory No. 2, Ex. C to Mem. Supp.; and Exs. 4-10 to the First Amended Complaint. Finally, on information and belief, after the product in question had been delivered, Mr. Javaherian consented to Ms. Syetta falsely stating to the credit card issuer that authorization for Polk Audio's credit card charges was never given. *See* Ex. F to Polk Audio's opening memorandum.

By thus conspiring with Mark and Arlene Syetta, Mr. Javaherian took part in a scheme for which, as shown above, the Syettas are answerable in this Court. Moreover, because Polk Audio is a Maryland corporation with its principal place of business in Maryland and the Dealer

Agreement expressly confers upon this Court jurisdiction over disputes thereunder, the individual defendants reasonably should have foreseen that their conduct would "lead to consequences in [this] forum." *Cawley*, 544 F.Supp. at 135. Accordingly, the Court properly may exercise personal jurisdiction over Mr. Javaherian in this case. *Id.*

Moreover, Mr. Javaherian may not invoke the protection of the fiduciary shield doctrine because the doctrine does not apply to an individual who "has a substantial interest in the corporation." *Undetermined Quantities*, 145 F.Supp.2d at 706; *see Zeman*, 717 F.Supp. at 377-78; *Christian Book Distribs.*, 137 Md.App. at 379. In *Zeman*, this Court held that it had personal jurisdiction over John and Suzy Burrows, two of the four shareholders of the defendant corporation—the Burrowses were the corporation's only officers and collectively controlled over 60% of the corporation's stock. The Court reasoned that

> [i]t would violate a sense of fairness to permit the Burrowses to solicit, negotiate, and consummate corporate business in Maryland in which they personally had so direct and substantial an interest and then allow them to avoid responding in Maryland to legal charges addressed to them personally, which arise from those transactions.... [T]he Court therefore concludes that under the circumstances of the instant case the fiduciary shield should not avail to protect the Burrowses from suit in Maryland, even if jurisdiction is based only on §§ 6-103(b)(3) and (b)(4).

717 F.Supp. at 378. Because, as shown above, Mr. Javaherian is the sole director, officer, and shareholder of AVC, and was an active participant in, and a direct beneficiary of, the fraud and conversion schemes alleged in this case, Mr. Javaherian should be joined as a Defendant in his personal capacity. *See Zeman*, 717 F.Supp. at 378; *Undetermined Quantities*, 145 F.Supp.2d at 706; *Christian Book Distribs.*, 137 Md.App. at 379.

The fiduciary shield doctrine also cannot protect Mark and Arlene Syetta because, as the Maryland courts repeatedly have made clear, "[t]he fiduciary shield doctrine serves as a limitation on the reach of a long-arm statute with respect to obtaining jurisdiction over an

individual *who acted solely as a representative of a corporation, rather than on his or her own behalf.*" *Christian Book Distribs.*, 137 Md.App. at 379 (emphasis added); *see also Cawley*, 544 F.Supp. at 135. In this case, as shown above, Mark and Arlene Syetta willingly, for their own personal advantage, and to induce Polk Audio to contract with AVC, took *personal* responsibility for AVC's payments to Polk Audio. Accordingly, the fiduciary shield doctrine cannot prevent the Syettas from answering the First Amended Complaint in this Court.

In opposing this motion, AVC devotes considerable effort to challenging Polk Audio's reliance on *Christian Book Distribs.* for the proposition that a fraudulent statement sent into Maryland constitutes a tortious act in Maryland for jurisdictional purposes. Mem. Opp. at 7-9. AVC's effort is immaterial because (a) by virtue of becoming personal guarantors of AVC, Mark and Arlene Syetta are amenable to jurisdiction under § 6-103(b)(1), which does not require tortious conduct, and (b) Steve Javaherian is equally amenable by virtue of being a co-participant in the unlawful scheme in question. Thus, all three individual Defendants are subject to this Court's jurisdiction even if the Court finds that a fraudulent statement sent into Maryland does not constitute tortious conduct in this State for purposes of § 6103(b)(3).[2]

In any event, AVC's arguments concerning the significance of *Christian Book Distribs.* lack merit. First, AVC contends that *Christian Book Distribs.* is inapposite because it involved the Maryland courts' review, pursuant to the Uniform Enforcement of Foreign Judgments Act (Md. Code Cts. & Jud. Proc. § 11-801 *et seq.*), of a Massachusetts court's judgment under Massachusetts law. Mem. Opp. at 8. This argument misses the point, because in *Christian Book*

---

[2] Despite AVC's contention that Polk Audio misinterprets *Christian Book Distribs.* AVC fails to offer any legal support for the proposition that a fraudulent statement sent into Maryland is not a tortious act in this State. The only legal precedent offered by AVC in this context did not involve a fraudulent statement. *See Zinz v. Evans & Mitchell Indus.*, 22 Md.App. 126, 134 (Md. Ct. Spec. App. 1974).

*Distribs.* the Court of Special Appeals also implicitly recognized that, under *Maryland law* as well as under Massachusetts law, a fraudulent statement sent into a State amounts to tortious conduct in that State. *Christian Book Distribs.*, 137 Md.App. at 381 (noting that the lower court's personal jurisdiction analysis was insufficient because the Maryland cases relied upon "*did not involve a tortious act committed in Maryland.*")

Second, AVC suggests that, under *Christian Book Distribs.*, a fraudulent statement sent into a State should be considered a tortious act in that State only when the maker of the statement is a corporation, as opposed to an individual. Mem. Opp. at 8-9. This argument is nonsensical and finds no support in an accurate reading of the passage quoted by AVC from *Christian Book Distribs.* Indeed, the purpose of that passage is to explain the Court of Special Appeals' reasons for discussing the fiduciary shield doctrine, which applies to individuals and not to corporations (*see* 137 Md.App. at 378-79)—it is not to hold that the locus of a fraudulent statement as a tortious act depends on whether the statement is made in an individual's personal capacity or on behalf of a corporation. Such a holding would have been unnecessary to the court's reasoning in *Christian Book Distribs.*, which did not involve a fraud claim. *See* 137 Md.App. at 370.

In any event, as shown above, each individual Defendant in this case is amenable to jurisdiction regardless of whether § 6-103(b)(3) is satisfied. Accordingly, the Court should grant Polk Audio's motion.

**B.   Discovery Would Be Unaffected By the Joinder of the Individual Defendants**

Although Polk Audio's proposed First Amended Complaint seeks to join Mr. Javaherian and Mr. and Mrs. Syetta as individual Defendants, it does not allege any material conduct on the part of those individuals that was not alleged in Polk Audio's original Complaint. The reason for this is simple: AVC's liability as alleged in that original Complaint is predicated on the conduct

of the three individual Defendants, whom Polk Audio now seeks to make personally responsible for fraud and conversion. In other words, to prove AVC's liability for fraud and conversion Polk Audio will have to prove the same essential facts needed to establish the individual Defendants' liability as alleged in the First Amended Complaint. Thus, no additional discovery will result from the joinder. Indeed, even before Polk Audio filed the instant motion, counsel for both Polk Audio and AVC had agreed that all three individual Defendants would be deposed and had scheduled the dates for those depositions. *See* Ex. I hereto. Thus, considerations of the burden of discovery should not affect the Court's ruling on this motion. Because discovery will be identical whether or not the individuals in question are joined as Defendants, the Court should grant Polk Audio's motion.

## CONCLUSION

For the foregoing reasons, and those stated in Polk Audio's opening memorandum, the Court should grant Polk Audio's motion and accept the attached First Amended Complaint for filing.

Dated: April 8, 2003

Respectfully submitted,

_____
Michael F. Brockmeyer (Fed. Bar No. 02307)
Paolo Morante (Fed. Bar No. 25287)

PIPER RUDNICK LLP
6225 Smith Avenue
Baltimore, Maryland 21209-3600
410-580-3000

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

POLK AUDIO, INC.

    Plaintiff

v.

AUDIO VIDEO CREATIONS, INC.,

    Defendant.

Case No.: WMN-02-3133

## [PROPOSED] ORDER

Before the Court is the Motion Of Plaintiff Polk Audio, Inc., For Leave To File The First Amended Complaint (the "Motion"). For the reasons stated in counsel's papers submitted in support and in opposition to the Motion, and in the interest of justice, the Court hereby ORDERS:

1. The Motion Of Plaintiff Polk Audio, Inc., For Leave To File The First Amended Complaint is GRANTED;

2. The Clerk shall cause a copy of the First Amended Complaint, with Exhibits, which is attached as Exhibit A to the memorandum of points and authorities in support of the Motion, to be filed as a docket item in this case.

IT IS SO ORDERED.

Dated: April ___, 2003

                                                              _____
                                                               William M. Nickerson
                                                               United States District Judge

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of April, 2003, I caused a copy of the foregoing Reply Memorandum In Support Of Motion Of Plaintiff Polk Audio, Inc., For Leave To File The First Amended Complaint to be filed electronically with the Court and served by electronic and U.S. mail upon the following counsel of record:

> Alfred L. Scanlan, Jr.
> Eccleston & Wolf
> 7th Floor, Scarlett Place
> 729 E. Pratt Street
> Baltimore, Maryland 21202-4460
> Tel. (410) 752-7474
> Fax: (410) 752-0611
> E-mail: scanlan@ewmd.com

_____
Paolo Morante